## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DERROD MILLER, #426-175        *

Plaintiff                    *

v.                         *       Civil Action No. JKB-14-2266

WARDEN SUZANNE FISHER     *
CO III SHANTE CLINTON[1]
SERGEANT ARNOLD JOHNSON  *
CO V RAYMOND PERE
CO IV JOSEPH REED          *
CO II M. SHAPRED
                         *

Defendants

## MEMORANDUM

This 42 U.S.C. § 1983 civil rights action seeks money damages and declaratory and injunctive[2] relief against five correctional officers and a warden.  Plaintiff Derrod Miller ("Miller"), a Maryland Division of Correction ("DOC") prisoner currently incarcerated at Western Correctional Institution ("WCI"), claims that on March 12, 2014, while housed at the Maryland Reception Diagnostic & Classification Center ("MRDCC"),[3] he was assaulted by correctional officers, denied immediate medical care for injuries caused by the assault, and wrongfully charged with institutional infractions relating to the incident.  (ECF No. 1, pp. 3-7).

---

[1] The Clerk shall amend the docket to reflect the full and complete spelling of defendants' names.

[2] Miller also asks that defendants be terminated from employment.  ECF No. 1, p. 7.  This relief cannot be granted by this court.  His request for transfer from Western Correctional Institution to a prison located nearer to his family (*id.*) bears no relation to the claim raised in the complaint, and accordingly will not be considered here.  His final injunctive relief request, that cameras be installed throughout the Maryland Reception Diagnostic and Classification Center (*id.*), has been rendered moot by his transfer from that facility.

[3] MRDCC is the "receiving" facility for prisoners entering the DOC.  Once classified, prisoners are transferred, typically within 30 days, to other DOC facilities across Maryland.

Defendants, through counsel, have filed a Motion to Dismiss or, in the Alternative Motion for Summary Judgment (ECF No. 14) which is opposed by Miller.[4] (ECF No. 19). A hearing is not needed to resolve the motion. *See* Local Rule 105.6. (D. Md. 2014). For the reasons that follow, defendant Fisher IS DISMISSED but defendants' motion, construed as a motion for summary judgment, otherwise IS DENIED.

## Standard of Review

Defendants' motion relies on materials outside the pleadings, and is construed as a motion for summary judgment. Summary judgment is governed by Federal Rules Civil Procedure 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis omitted). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility."

---

[4] Miller's motion for additional time to respond to the dispositive motion (ECF No. 18) is granted nunc pro tunc.

*Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). Because

Plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551

U.S. 89, 94 (2007). But the court must also abide by the "'affirmative obligation of the trial

judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*,

346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–

79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### Background

Miller claims that at approximately 9:50 a.m. on March 12, 2014, while participating in

out-of-cell exercise, handcuffed to a "black box" and wearing leg irons, he stopped to talk to

Officer Clinton about a dietary concern.  Clinton had just found "some contraband" and was not

receptive to conversation.   (ECF No. 1, p. 3).   Officer Reed, who had been summoned by

Clinton, entered the area and interrupted the conversation, stating "I have more important shit to

handle, take ya ass upstairs."   (*Id.*).   When Miller protested, Reed again responded rudely and

"out of anger grabbed" Miller, slamming his head against a metal door and stabbing Miller in the

face with the knife that Clinton had found.  (*Id.*, pp 3-4).  Miller was then "stomped" by Officers

Shapred, Johnson, Clinton, and two unknown officers.  (ECF No. 1, pp. 4-5).

Miller claims the assault continued while he waited in the medical area, and that

afterward Officer Pere refused to conduct an investigation into the incident.  (ECF No. 1, p. 5).

He provides documentation supporting his statement that the institutional charges placed against

him with regard to the incident were dismissed by a hearing officer on the basis that "the

Institution[al] Rep]resentative] does not wish to pursue the charges due to the lack of evidence

forwarded by MRDCC."  (ECF No. 1-3).

Defendants present a different version of events based on incident reports prepared by Clinton, Reed, and other correctional officers.  According to DOC personnel, on Wednesday, March 12, 2014, at approximately 9:52 a.m., Clinton observed a metal homemade knife wrapped in a white cloth fall from Miller's pants leg.  (ECF No. 14-2, Sergeant Shante Clinton's Notice of Incident Report).  Clinton retrieved the weapon from the floor and reported her finding to Reed.  (ECF No. 14-3, Notice of Inmate Rule Violation, p. 2).  While Reed and Clinton were discussing what had been found, Miller abruptly confronted Reed and said, "Fuck you, I don't want to hear that shit, that aint my knife."  (*Id.*).  Reed grabbed Miller by his waist chain and took him to the ground (*id.*), and Corporal Tia Taylor used a radio to call a Signal 13 (Office Needs Assistance).  (ECF No. 1-4,  Serious Incident Report, p. 4).  Miller remained combative and resisted Reed's order to stop moving.  (ECF No. 14-3, Notice of Inmate Rule Violation, p. 2).  During the struggle, Miller attempted to take the knife from Reed, which resulted in cuts to Reed's fingers.  (*Id.*).

Another inmate, Tavon Thompson, #421-159, ran towards the scuffle, prompting Clinton to restrain Thompson.  (*Id.*).  Officers Don Marcano and Tameka Cobb arrived on the scene and helped subdue both Miller and Thompson.  (*Id.*).  At approximately 10:47 a.m., Miller was taken to the medical department where he was evaluated, treated, and discharged by Registered Nurse Sarah Ross.  (*Id.*).  Ross diagnosed and treated Miller for a scratch to the right side of his face.  (ECF No. 14-5, Office of Inmate Health Services Form).

Miller received an adjustment ticket for Rule Violation 101 (staff assault and battery) and Rule Violation 400 (disobeying an order).  (ECF No. 14-3, Notice of Inmate Rule Violation, p. 1).

**Analysis**

Defendants have raised an affirmative defense to Miller's claims, alleging that the complaint must be dismissed in its entirety due to Miller's failure to exhaust administrative remedies.  The Prison Litigation Reform Act ("PLRA") contains a statutory provision that reads, in pertinent part:

> (a) Applicability of administrative remedies
>
>  No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

 42 U.S.C. § 1997e.  Miller is subject to the strict requirements of the exhaustion provisions, and it is of no consequence that he is aggrieved by single occurrences, as opposed to a general conditions-of-confinement claim.  *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct).  Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure, *see Booth v. Churner*, 532 U.S. 731, 741 (2001), and a claim that has not been exhausted may not be considered in federal court.  *See Jones v. Bock*, 549 U.S. 199, 220 (2007).

Administrative remedies must, however, be available to the prisoner and a court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See id.* 478 F.3d at 1225; *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See*

> *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in
> federal court, a prisoner must have utilized all available remedies "in accordance
> with the applicable procedural rules," so that prison officials have been given an
> opportunity to address the claims administratively. *Id.* at 87. Having done that, a
> prisoner has exhausted his available remedies, even if prison employees do not
> respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).   Thus, unexhausted claims must be

dismissed, unless Miller can show that he, personally, has satisfied the administrative exhaustion

requirement under the PLRA or that defendants have forfeited the right to raise non-exhaustion

as a defense. *See Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003).

In his complaint, Miller attaches the ARP grievance he submitted the day of the incident,

March 12, 2014.  (ECF No. 1-1, pp. 4-5, ARP No. WCI0437-14).  The ARP was procedurally

dismissed by WCI's Institutional ARP Coordinator who noted on March 20, 2014, that "[s]ince

this case shall be investigated by IIU, no further action shall be taken within the ARP Process."

(ECF 1-1, p. 4).  The court is aware that once the Department of Public Safety and Correctional

Services' Internal Investigations Unit ("IIU") initiates investigation, the matter no longer is

subject to the ARP process. *See Bogues v. McAlpine, et al.*, Civil Action No. CCB-11-463 (D.

Md.), ECF No. 23, Exhibit 4 at 23; *Oliver v. Harbough, et al.,* Civil Action No. ELH-11-996 (D.

Md.), Memorandum of December 19, 2011, ECF No. 31 at 7-8.  Thus, defendants' invocation of

the affirmative defense of failure to exhaust administrative remedies fails with regard to the

March 12, 2014, incident involving Miller.

Defendant Fisher seeks dismissal from suit on the basis that Miller fails to allege that she

played any role in the incident.  Section 1983 requires a showing of personal fault, whether

based upon the defendant's own conduct or another's conduct in executing the defendant's

policies or customs.   *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for

an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, it must be affirmatively

6

shown the official acted personally to deprive the plaintiff's rights).  A claim based on the doctrine of respondeat superior has no place in § 1983 litigation. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983).  Thus, supervisory liability under § 1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).  Miller has failed to establish Fisher's involvement in, or knowledge of, the incident.  Fisher is entitled to dismissal from suit.

Defendants Clinton, Johnson, Pere, Reed, and Shapred rely on various submissions, including incident reports, to rebut Miller's claim of excessive (and unnecessary) use of force and the ensuing filing of disciplinary charges against him.  Their motion is not accompanied by affidavits or declarations, and is therefore deficient.[5]  Furthermore, they fail to explain why an incident allegedly caused by an assaultive prisoner that resulted in injury to several correctional officers was not pursued by corrections staff, either through criminal prosecution or supporting disciplinary charges against Miller.

Accordingly, defendant Fisher will be dismissed from this action and the motion for summary judgment filed on behalf of the five correctional officers will be denied.  A separate

---

[5] IIU investigatory reports also are omitted from defendants' submission.

order, setting further deadlines, follows.


March 24, 2015                                 _____/s/_____
                                               James K. Bredar
                                               United States District Judge